## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| **Longview Power, LLC, _et al._,**[1] | Case No. 13-12211 (BLS) |
| | Jointly Administered |
| Debtors. | |
| **Longview Power, LLC, _et al._, and** **MUFG Union Bank, N.A., a nominal plaintiff, solely in its capacity as first-lien asset collateral agent under the Longview Credit Agreement,** | Adv. No. 14-50369 |
| Plaintiffs, | Related to Adv. Docket Nos. 10, 19, 21, 35, 39, 40, 47, 52, 54, 58. |
| v. | |
| **First American Title Insurance Co.** | |
| Defendant. | |

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification number are: Longview Power, LLC (1860); Longview Intermediate Holdings C, LLC (1008); Mepco Holdings, LLC (6654); Mepco Intermediate Holdings A, LLC (0502); Mepco Intermediate Holdings, LLC (4248); Mepco, LLC (3172); Coresco, LLC (6397); Dana Mining Company of Pennsylvania, LLC (8721); Dana Mining Company, LLC (4499); Mepco Conveyor, LLC (0477); Shannopin Materials, LLC (1616); Border Energy, LLC (2798); and Alternate Energy, LLC (2428).

## OPINION[2]

Before the Court is Defendant First American Title Insurance Company's ("First American") Motion to Dismiss the First Amended Complaint, or in the Alternative, to Abstain (the "Motion") [Adv. Docket No. 39]. Longview Power Company, LLC ("Longview") initiated this adversary proceeding against First American with the filing of a Complaint [Adv. Docket No. 1] on May 23, 2014. The First Amended Complaint (the "Amended Complaint") [Adv. Docket No. 19] was filed July 3, 2014, to add MUFG Union Bank, N.A. as a nominal Plaintiff, solely in its capacity as first-lien asset collateral agent under the Longview Credit Agreement (in such capacity, the "Collateral Agent"). For the following reasons, the Motion will be denied, and the Court will neither dismiss this action nor abstain in favor of a proceeding in California state court.

## I. BACKGROUND

The Debtors operate an integrated power generation enterprise, through two distinct business units: (1) Longview, which was formed for the purpose of constructing and operating a 700 net megawatt supercritical coal-fired power plant in Maidsville, West Virginia (the "Power Plant"), and (2) Mepco, which is a vertically integrated coal miner and processor with facilities located in southwestern Pennsylvania and northern West Virginia.

Construction on the Power Plant began in 2007 and was funded, in part, by debt totaling approximately $1.2 billion. The Debtors obtained the funds pursuant to a credit agreement, dated as of February 28, 2007 (the "Longview Credit Agreement"). The lenders under the Longview Credit Agreement (the "Longview Lenders") obtained liens on substantially all of the Debtors' assets, including the Power Plant, to secure their loans. In connection with the Debtors' entry into the Longview Credit Agreement, on March 9, 2007, First American issued a policy of title insurance (the "Policy") to the Collateral Agent for the benefit of the Longview Lenders in the amount of $825 million. None of the Debtors are parties to the Policy.

Longview entered into contracts with Siemens Energy, Inc. ("Siemens"), Kvaerner North American Construction, Inc. ("Kvaerner"), and Foster Wheeler North America Corporation ("Foster

---

[2] This Opinion constitutes the Court's findings of fact and conclusions of law, as required by the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7052, 9014(c).

Wheeler") (collectively, the "Contractors") for the design, supply, construction, and commissioning of the Power Plant. The Debtors took over the Power Plant in December 2011, and shortly thereafter the Contractors asserted mechanics' liens on the Power Plant and related properties (the "Mechanics' Liens"). On February 8, 2012, Kvaerner asserted mechanics' liens in the aggregate amount of $242.2 million; on February 17, 2012, Siemens asserted mechanics' liens in the aggregate amount of $93.5 million; and Foster Wheeler asserted mechanics' liens in the aggregate amounts of $8.8 million on February 23, 2012, and $14.9 million on May 10, 2012. The Contractors contend that the Mechanics' Liens are senior to any liens securing claims arising under the Longview Credit Agreement with respect to the Power Plant and related properties; the Longview Lenders dispute this contention.

The Debtors have asserted their own substantial claims against the Contractors. The Debtors allege that the Power Plant has suffered from extended planned outages, additional unscheduled outages, generation derating, and the need for material repairs. As a result, the Debtors state that they have been unable to operate the Power Plant at full capacity and have been limited to selling electricity on a day-ahead basis. The Debtors blame the Contractors for these shortcomings in the operation and performance of the Power Plant. In order to resolve the issues between them, in 2011 the Debtors and the Contractors entered into an arbitration proceeding, *Kvaerner North American Construction, Inc., and Siemens Energy, Inc. v. Longview Power LLC and Foster Wheeler North America Corp.*, AAA Case No. 50 158 T 00411 11 (the "Arbitration").

In addition to the operational challenges described above, the Debtors also face significant market pressures: there has been a drop in both wholesale electricity prices and demand for electricity since construction on the Power Plant commenced in 2007, and a drop in wholesale coal prices. Each of these factors has adversely affected the Debtors' business plan and strategic optionality. The Debtors began considering restructuring options in 2012, and ultimately filed voluntary Chapter 11 petitions on August 30, 2013 (the "Petition Date").

In conjunction with their bankruptcy petitions, the Debtors filed a cash collateral motion [Docket No. 25], in which they indicated an intent to promptly draw on $59 million of letters of credit, which were posted by Foster Wheeler in favor of Longview Power, LLC (the "Foster Wheeler LCs"). The Contractors vigorously disputed the Debtors' right to draw on the LCs. On November 15, 2013, the Court

entered an agreed order [Docket No. 463] lifting the automatic stay to allow the Arbitration to proceed with respect to all issues except the Foster Wheeler LCs, extending the expiration date of the Foster Wheeler LCs, and prohibiting the Debtors from drawing on the Foster Wheeler LCs until further order of the Court.

## A. The Original Plan

Meanwhile, throughout the fall of 2013, the Debtors and holders of approximately sixty (60) percent of the debt outstanding under the Longview Credit Agreement (the "Backstoppers") engaged in negotiations for a consensual chapter 11 process. The Debtors and the Backstoppers agreed on the terms of the Debtors' first proposed plan of reorganization (the "Original Plan"), which contemplated a debt-for-equity transaction by which the holders of claims arising under the Longview Credit Agreement would exchange their debt for the majority of the equity in the reorganized Debtors. The plan required that the Debtors obtain entry of an order from the Court estimating the Mechanics' Liens at $0.00 for all purposes (including distribution). The Debtors filed a motion to estimate the Mechanics' Lien claims [Docket No. 582] on December 11, 2013, and the Contractors filed objections to the estimation motion [Docket Nos. 721, 724 & 728].

On December 18, 2013, the Court entered an order [Docket No. 663] approving, *inter alia*, the Debtors' disclosure statement [Docket No. 672] and authorizing the Debtors to solicit votes on the Original Plan. The Debtors initially set a hearing to confirm the Original Plan for February 11, 2014. Since February 2014, the Debtors, in consultation with the Backstoppers, have elected to adjourn the claims estimation process and the confirmation process for the Original Plan.

The Debtors have continued to engage in negotiations with the Backstoppers and the Contractors regarding a consensual resolution to these Chapter 11 cases, including participating in a mediation ordered by the Court on March 6, 2014 [Docket No. 1012]. The Debtors reached a significant settlement with Foster Wheeler, whereby Foster Wheeler agreed to release its Mechanics' Lien claims and perform certain work on the Power Plant. That settlement was approved by the Court on March 7, 2014 [Docket No. 1018] over the objections of Kvaerner and Siemens.

## B. The Amended Plan

Following the settlement with Foster Wheeler, the Debtors proposed a first amended plan of reorganization (the "Amended Plan") [Docket No. 1139]. The Amended Plan takes a different tack with

respect to the Contractors' Mechanics' Lien claims, and instead of estimation contemplates that the remaining Mechanics' Lien claims of Kvaerner and Siemens will be covered by proceeds from the Policy. To achieve this, the Amended Plan provides for an agreement with the Collateral Agent for an assignment of certain cash proceeds from the Policy (but not the Policy or the claim itself) by the Collateral Agent to a trust formed by the Debtors for the benefit of Kvaerner and Siemens. The Amended Plan further requires that the Debtors obtain a determination that coverage exists under the Policy for the losses the Longview Lenders will incur if the Mechanics' Liens are determined to be valid and senior to the liens securing the claims arising under the Longview Credit Agreement. By Order dated July 15, 2014, the Court authorized an assignment of the proceeds from the Collateral Agent to the Debtors [Docket No. 1379].

The Assignment of Proceeds Agreement (the "Assignment") contemplates that the Debtors and the Collateral Agent each possesses rights or interests relating to the Policy. Specifically, at paragraph one the Assignment states:

> The Assignor retains all rights to continue administration of the Title Insurance Policy and to assert and prosecute any and all claims thereunder, other than any claims or assertions which may be made by the Assignee in connection with this Agreement that relate to the Title Insurance Proceeds Assigned to the Assignee hereunder.

However, the Assignment also provides that the Debtors have no claims to ownership in the Policy, and that the Collateral Agent reserves all of its rights under the Policy other than claims relating to proceeds. Specifically, the Agreement provides:

> For the avoidance of doubt, the Assignment is an assignment of only the cash proceeds from the Title Insurance Policy as set forth above, and is in no respect, in whole or in part, an assignment of the Title Insurance Policy or any claims of the Collateral Agent thereunder.

On May 16, 2014, First American filed a complaint against the Collateral Agent in the Superior Court of Orange County, California (the "California Action") to determine coverage under the Policy and asserting certain bars or defenses to coverage. On May 23, 2014, the Debtors filed a motion in this Court to enforce the automatic stay, or in the alternative, for preliminary and permanent injunctive relief (the

"Stay Motion") [Docket No. 1187] in order to halt the California Action. As mentioned above, the Complaint in this adversary proceeding was filed the same day.

At a hearing on June 10, 2014, the Court granted the relief requested by the Plaintiffs in the Stay Motion. On June 19, 2014, the Court entered an order (the "Stay Order") [Docket No. 1296] pursuant to which the Court found that the California Action was subject to the automatic stay under section 362 of the Bankruptcy Code, or alternatively, that the facts and circumstances warranted the extension of the stay to the California Action.

Following entry of the Stay Order, First American filed motions in this adversary proceeding seeking to (a) withdraw the reference to the bankruptcy court with respect to this adversary proceeding [Adv. Docket No. 5], (b) determine the proceeding's core/non-core status [Adv. Docket No. 10], and (c) dismiss or in the alternative asking the Court to abstain from hearing this proceeding (the instant Motion). The hearing on the core/non-core issue was held on July 31, 2014.

The Court ruled on the proceeding's core/non-core status by Memorandum Order on August 13, 2014 [Adv. Docket No. 58] (the "Core/Non-Core Order"). That Order found and determined that the claim for declaratory judgment regarding whether the applicable proceeds of the Policy are property of the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 541 is a core claim. The Court found that the claim for declaratory judgment regarding the availability of coverage under the Policy is a non-core claim.

The Opening Brief [Adv. Docket No. 40] addressing dismissal and abstention was filed by First American July 17, 2014. Plaintiffs filed their response [Adv. Docket 40] on July 31, 2014. First American filed its reply [Adv. Docket No. 52] on August 7, 2014, and a hearing to consider the Motion was held on August 25, 2014. The matter has been fully briefed and well argued, and is ripe for decision.

## II. THE PARTIES' POSITIONS

### A. First American's Position

First American makes four arguments in support of the Motion to Dismiss. First, it argues that the Court lacks subject matter over the coverage claim because it is a state law claim between two non-debtors, and that the Debtors have no rights under the Policy. Second, First American claims that Plaintiffs lack standing because Plaintiffs are not a party to the insurance policy, and only the proceeds of the insurance

policy are being assigned – not the policy itself. Thus, First American believes Plaintiffs have no right to demand a declaration of coverage under the Policy. Next, First American contends that the determination of whether the proceeds are property of the estate is not ripe for adjudication because there has not been a loss and the underlying lenders have not yet failed to recover on their debt on account of the senior mechanics' liens. Fourth, First American states that 28 U.S.C. § 1359 bars jurisdiction because the Debtors colluded with the Collateral Agent and other parties to manufacture jurisdiction in this Court. Alternatively, in the event that this Court concludes that it has jurisdiction over this matter, First American argues that the Court should abstain because the standards for permissive and mandatory abstention are satisfied.

## B. The Plaintiffs' Position

With respect to dismissal, Plaintiffs stress that the Court has previously ruled (in the Core/Non-Core Order) that it possesses jurisdiction over this matter. Plaintiffs also assert that neither applicable law nor sound policy require the Court to refrain from addressing the coverage question prior to a final ruling in the underlying fight over the mechanics' liens. Second, Plaintiffs maintain that the debtors have standing because they are real parties in interest in the Collateral Agent's claims to proceeds or payment under the Policy by virtue of the assignment. Third, Plaintiffs contend that 28 U.S.C. § 1359 does not affect jurisdiction in this action because that statute only applies to federal diversity jurisdiction, not bankruptcy jurisdiction. Plaintiffs also deny that they have behaved collusively. With respect to abstention, Plaintiffs argue that neither mandatory nor permissive abstention is proper because the California Action was not properly filed, and because the California Court cannot timely adjudicate the claim.

## III. JURISDICTION & VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), (b)(1), and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. §§ 157(b)(2)(A), (K), and (O).

# IV. LEGAL ANALYSIS

## A. Motion to Dismiss

### 1. The Court has Jurisdiction Over the Adversary Proceeding.

Under 28 U.S.C. § 1334(b), the Court has original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." "In enacting the Bankruptcy Reform Act of 1978, Congress intended to grant bankruptcy courts broad jurisdiction to bring together all civil proceedings concerning the bankruptcy estate." *In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 221 (Bankr. D. Del. 1995). The seminal case in this Circuit on the subject is *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984 (3d Cir. 1984) (overruled on other grounds). Prior to conformation of a plan of reorganization, under the *Pacor* "conceivable effect" test, "related-to" jurisdiction exists if "the outcome of [a] proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* at 994. This includes a proceeding "whose outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* The Third Circuit has clarified, however, that "[b]roadly worded as [the Pacor test] is . . . related-to jurisdiction 'is not without limitation.'" *W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, 591 F.3d 164, 171 (3d Cir. 2009).

First American argues that there is no subject matter jurisdiction over the coverage claim because the outcome of the proceeding cannot conceivably have any effect on the estate being administered in bankruptcy. Citing *In re Combustion Engineering*, 391 F.3d 190, 201-02, 228-29 (3d Cir. 2004) to support its position, First American notes that the Third Circuit held in that case that the bankruptcy court did not have subject matter jurisdiction over a channeling injunction in favor of non-debtors, allowing those non-debtors to make necessary contributions to the plan. Additionally, First American argues that the coverage claim is a state law claim between two non-debtors, and that the Debtors have no rights under the Policy. Finally, First American believes the Debtors' approach to the "related to" jurisdiction argument would result in limitless jurisdiction for any relief a debtor chose to include in its plan.

First American's reliance on *In re Combustion Engineering* is misplaced. The release in *Combustion Engineering* was to benefit a third

party in exchange for a contribution to the plan, and is both procedurally and substantially distinguishable from the case at bar. Here, the Policy was issued in connection with a credit agreement financing the Debtors' primary asset and insuring against loss to the Debtors' secured lenders.    Additionally, as noted, by way of the Core/Non-Core Order this Court previously held that there is "related to" jurisdiction over the coverage claim.    In its Memorandum Order of August 13, 2014 [Adv. Docket No. 57] at ¶ 28, the Court stated:

> The Court is cognizant of the significance to the Debtors of the dispute over the Title Insurance Policy. The Debtors have formulated the Amended Plan in hopes of successfully concluding a very complex operational and financial restructuring involving billions of dollars in claims and assets. Nevertheless, the immediate question is whether an insurance coverage dispute between an insurer and a non-debtor invokes this Court's core jurisdiction. While it is clearly "related to" these bankruptcy proceedings, the Court concludes that the coverage dispute is a non-core matter.

There is nothing in the record to compel the Court to change or revisit its prior ruling.    A determination that coverage is available under the Policy would result in an increase to the assets available to the Debtors and their stakeholders under the Amended Plan. Conversely, a determination that the coverage is not available would result in a reduction in assets available to the Debtors.    Regardless of the ruling, the coverage dispute will affect the Debtors' pending plan of reorganization.    Accordingly, the Court finds it has "related to" jurisdiction to hear this dispute.

## 2. Plaintiffs have Standing to Bring the Coverage Claim.

The three required elements of constitutional standing are that a plaintiff must have suffered an injury in fact, the injury is fairly traceable to the challenged action of the Defendant, and it must be likely that the injury can be redressed by a favorable decision. *Coastal Outdoor Advertising Group, LLC v. Township of East Hanover, New Jersey*, 397 Fed. Appx. 794, 795 (3d Cir. 2010).    "The injury-in-fact element is often determinative." *Id.* Additionally, a plaintiff may not have prudential standing where it tries to assert the rights of third parties. *Deutsche Bank National Trust Co. v. FDIC*, 717 F.3d 189, 194 (D.C. Cir. 2013).

First American argues that the Debtors lack both constitutional and prudential standing because they are not a party to the Policy. Only the proceeds of the Policy are being assigned – not the Policy itself nor any of the claims of the Collateral Agent.  Because of this, First American states that the Debtors have no rights under the Policy, and thus cannot bring this action.

Plaintiffs respond that they are real parties in interest in the Collateral Agent's economic claims under the Policy, due to the provisions of the Amended Plan and the Assignment.  Additionally, the Debtors were specifically assigned the right to assert and prosecute any and all claims relating to the Policy proceeds that were assigned. Plaintiffs disagree with First American that the claims under the Policy were not assigned, stating that while the Collateral Agent may have retained its right to bring some claims under the Policy, the Debtors have the right to bring the claim for the proceeds that were assigned to them.  Plaintiffs also argue that the Debtors will suffer an imminent injury if coverage is not available because their interest in the insurance proceeds will be worthless.

Both parties cite *Shamrock Bank of Florida v. First American Title Insurance Co.*, 2014 WL 1304694 (S.D. Ill. Mar. 28, 2014).  There, the court held that a bank had standing to bring a breach of contract claim on the title policy because Shamrock was an assignee of the policy, and thus an "insured" under the policy.  *Id.* at *9.  Plaintiffs cite *Shamrock* to support the proposition that an assignee of a title insurance policy has standing to enforce the policy.  First American attempts to distinguish *Shamrock* on the grounds that the assignors did not retain any claims under the policy, and the Collateral Agent here did not assign the Policy itself.

The Court finds that Longview is a partial assignee of the Policy, and thus, has standing.  The Policy provides that the insured is the Collateral Agent and "its successors and assigns, as their interests may appear." Assignment at p. 6.  The Assignment states that Longview was assigned "all of the [Collateral Agent's] rights, benefits, privileges, and interest in . . . the Title Insurance Proceeds."  *Id.* at ¶ 1.  In addition, the Assignment states that the Debtors have the right to protect their interest in the Policy proceeds.  Nothing in *Shamrock* or in the Policy provides that all rights must be assigned before a party can assert any rights.  There is no reason a partial assignment must fail.  Because the claims at issue relate to Policy proceeds in which the Debtors have a stake, the Debtors have standing to assert these claims.

### 3. The Complaint Pleads a Ripe Controversy Between the Parties

Ripeness is one of the jurisprudential foundations of jurisdiction, and without a ripe case or controversy a court is unable to render anything other than an advisory opinion. *In re Walton*, 340 B.R. 892, 893 (Bankr. S.D. Ind. 2006). "[D]eclaratory judgments are, of necessity, rendered before an 'accomplished' injury has been suffered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995). A declaratory judgment satisfies standing and ripeness requirements if "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *St Thomas-St John Hotel & Tourism Ass'n v. Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) (quoting *Step-Saver Data Sys. Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 2006) (internal quotations omitted)).

First American argues that there has been no loss because the underlying lenders have not yet failed to recover on their debt due to senior mechanics' liens. Before proceeds can become available for an assignment, certain conditions precedent must occur, including: (1) there must be a determination that coverage exists; (2) a loss must occur; and (3) First American must determine that it will pay the Collateral Agent as opposed to purchasing the indebtedness, paying, or directly settling with the parties asserting the senior claim. The Amended Plan does not require a determination that the proceeds are property of the estate, and the relevant dispute is the coverage claim. The coverage and proceeds claims are separate and distinct. As to these two claims, First American contends that the proceeds claim is not ripe.

Plaintiffs respond by arguing that First American cannot bifurcate the Debtors' claim for declaratory judgment, that the proceeds are property of the estate under Section 541 of the Bankruptcy Code and that coverage is available, into two separate claims. It is a single cause of action by which the Debtors are seeking a determination of the scope and extent of their interest in an estate asset. First American has effectively conceded that the coverage claim is ripe by filing the California Action against the Collateral Agent. The parties' interests are clearly adverse. This is an action for declaratory relief, and courts routinely grant declaratory relief regarding the scope of insurance coverage before the underlying claims have matured or finally adjudicated. A declaratory judgment would conclusively establish the parties' rights and obligations. In the bankruptcy context, declaratory

relief is warranted when necessary to achieve a successful reorganization.

Property of the estate includes contingent claims. As stated above, if coverage is found, the assets of the Debtors' estate could potentially increase, affecting a plan of reorganization. As required for a declaratory judgment, the interests of the parties as to the Policy Coverage are adverse. First American seeks a determination that Longview is not entitled to coverage, whereas Plaintiffs seek a determination that coverage exists. A declaratory judgment would be conclusive on the issue of coverage, and would resolve the dispute between First American and Plaintiffs. Therefore, the Court finds that this case is ripe for adjudication.

### 4. 28 U.S.C. § 1359 Does not Affect Jurisdiction

First American next contends that the Debtors and the Collateral Agent have improperly colluded, via the Assignment, to create a basis for this Court to assert jurisdiction over matters relating to the Policy. Under 28 U.S.C. § 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." Generally, courts consider a number of factors to determine whether parties have colluded to manufacture jurisdiction, including:

> The assignee's lack of a pervious connection with the claim assigned; the remittance by the assignee to the assignor of any recovery; whether the assignor actually controls the conduct of the litigation; the timing of the assignment; the lack of any meaningful consideration for the assignment; and the underlying purpose of the assignment.

*Federal Realty Inv. Trust v. Juniper Props. Group,* 2000 WL 424287, at *4 (E.D. Pa. Apr. 18, 2000).

First American argues that § 1359's prohibition on collusive assignments applies to this case. In a nutshell, First American accurately observes that there would be no doubt that this Court would lack jurisdiction in the absence of the Assignment; hence, it deems the assignment to be nothing more than a tool to manufacture jurisdiction and wrongly bring this dispute to a forum selected by the Debtors. The Plaintiffs respond first that § 1359 does not apply to bankruptcy cases. Second, and more importantly, the Plaintiffs contend that the

assignment was not the product of wrongful collusion and that the question of collusion raises disputed issues of fact not suitable for disposition under Rule 12.

It is an interesting question whether 28 U.S.C. § 1359 applies to bankruptcy proceedings. *E.g., Belcufine v. Aloe*, 112 F.3d 633, 637 (3d Cir. 1984) ("The district court pointed out that it was unclear whether Section 1359 even applied to federal question cases, i.e., non-diversity cases.") *but see In re Maislin Indus.*, 66 B.R. 614, 617 (E.D. Mich. 1986) (holding that 28 U.S.C. § 1359 applies in the context of a bankruptcy proceeding). Even assuming that Section 1359 applied, a motion to dismiss is an inappropriate basis for ruling today because a significant factual question remains. At this stage, there is no evidence of collusion in the record, as required under Section § 1359. For a motion to dismiss, all factual allegations of the plaintiffs must be taken as true. The record before the Court is thus not sufficient to permit disposition of the collusive jurisdiction argument at this stage.

## B. Abstention

Mandatory abstention under 28 U.S.C. § 1334(c)(2) requires that each of six separate elements must be satisfied: (1) the motion to abstain must be timely filed; (2) the underlying action must be based on a state law claim or cause of action; (3) an action must have already been commenced in state court; (4) the action must be able to be timely adjudicated in the non-bankruptcy court venue; (5) there must be no independent basis for federal jurisdiction that would have permitted the action to be commenced in federal court absent bankruptcy and (6) the matter must be non-core under 28 U.S.C. § 157. *In Re Mobile Tool Int'l*, 320 B.R. 552, 556 (Bankr. D. Del. 2005). The moving party carries the burden to establish each of these six requirements; where all six requirements are met, a bankruptcy court must abstain in favor of having the litigation proceed in another forum. *Id.*

Permissive abstention under 28 U.S.C. § 1334(c)(1) provides that "in the interest of justice, or in the interest of comity with State courts or respect for State law," a court may "abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." In determining whether to permissively abstain from hearing a matter, courts consider twelve factors, including the presence of a related proceeding commenced in state court or other non-bankruptcy court, and the need for timely and efficient administration of the estate. *In re Direct Response Media, Inc.*, 466 B.R. 626, 659 (Bankr. D. Del. 2012).

The Court's decision to deny the request for both mandatory and permissive abstention turns on (i) the lack of a properly filed related proceeding previously commenced in the California Action and (ii) the need for timely and efficient resolution of the issue, which are factors of both mandatory and permissive abstention. The Court's discussion below of whether the California Action was properly commenced and whether the California Action can be timely and efficiently adjudicated thus applies to both mandatory and permissive abstention.

### 1. The California Action was not Properly Commenced Before the Filing of the Adversary Proceeding

First American argues that the coverage claim in the California Action was filed prior to this adversary proceeding. Abstention may be proper even where the state court action is filed on the same day as the bankruptcy proceeding. *Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*, 278 B.R. 43, 50 (Bankr. D. Del. 2002). Once commenced, the state court action does not need to be pending in order to satisfy this requirement. *Stoe v. Flaherty*, 436 F.3d 209, 214 (3d Cir. 2006) ("'Is commenced' simply cannot reasonably be read to require both commencement and ongoing pendency in state court. In that regard, § 1334(c)(2) stands in sharp contrast to § 1334(e), which refers to the 'district court in which a case under title 11 *is commenced or is pending....*'. Congress could have likewise required that there exist a "pending" case in state court as a prerequisite to mandatory abstention, but it opted not to do so." (internal citation omitted)).

Plaintiffs respond by observing that the California Action was not commenced before the filing of the Debtors' Chapter 11 petitions. Plaintiffs further note that even if it was timely filed, the California Action does not cover each of the issues raised in this adversary proceeding and does not include the debtors as parties to the proceeding. The Amended Complaint seeks a judgment declaring that the applicable proceeds of the Policy are property of the Debtors' bankruptcy estate pursuant to Section 541(a) of the Bankruptcy Code. Finally, abstaining in favor of the California Action, which does not include the Debtors, would harm the Debtors because they would be unable to protect their interests in assets of these chapter 11 estates, and could be collaterally estopped to the detriment of these estates.

The Court finds that the California Action was not properly commenced prior to the filing of this bankruptcy proceeding. The majority of courts have found that a state court proceeding must be pending prior to the commencement of the bankruptcy in order to

warrant abstention. *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 878 (Bankr. M.D.N.C. 2011) ("The clear majority of cases supports the position that the cause of action must be pending in state court prior to the bankruptcy for mandatory abstention to apply."); 1 *Collier on Bankruptcy,* ¶ 3:05[2] ("[M]any courts have held that for [mandatory abstention to be applicable, the cause of action must have been commenced prior to the filing of the petition commencing the title 11 cases."). *See also Houston Baseball Partners LLC v. Comcast Corp. (In re Houston Regional Sports Network, L.P.)*, 2014 WL 3697530, at *2 (Bankr. S.D. Tex. July 23, 2014) ("Section 1334(c)(2) requires that a state court action must be commenced prior to the bankruptcy proceeding . . . . Because the state-court action was filed post-petition, mandatory abstention is not warranted."); *In re Jefferson Count, Ala.*, 484 B.R. 427, 445-46 (Bankr. N.D. Ala. 2012) ("[A]n action must be pending in state court prior to the bankruptcy for mandatory abstention to apply."); *In re Ferretti Constr. Inc.*, 208 B.R. 396, 398 (Bankr. S.D. Tex. 1995) ("Mandatory abstention does not apply . . . [because] [a]nother proceeding has not been commenced in a State forum of appropriate jurisdiction. Such a proceeding against the Debtor could not have been commenced without the movant first obtaining relief from the automatic stay.").    To recognize the California Action here as a legitimate predicate for abstention could create flawed incentives, encouraging parties to take the risk of commencing post-petition litigation, in hopes of convincing a bankruptcy court to defer to that other forum. The undisputed record is that the California Action was filed over nine months after the August 30, 2013 petition date in these cases. The Court finds that the California Action was therefore not properly commenced prior to the bankruptcy proceeding; mandatory and permissive abstention are not required here.

### 2. First American has not Carried its Burden to Prove the California Action can be Timely Adjudicated

First American contends that the California Action can be timely adjudicated in the state court in California. The record before this Court reflects that the Debtors and First American are moving forward here with discovery and briefing in anticipation of a scheduled trial on the merits of the coverage dispute (in the context of the confirmation hearing) in mid-November of this year. The California Action, by contrast, remains at its earliest stages (with no answer yet filed) and is currently subject to this Court's June 19, 2014 Order staying that litigation.

These Chapter 11 cases have been pending for over a year, and the Debtors have already stated that their reorganization strategy cannot move forward absent a ruling on the issues relating to the Policy.  It seems highly improbable that the litigation in California could be re-started and prosecuted on a timeline comparable to what the parties have already established in this Court.  Accordingly, the Court finds and concludes that First American has not carried its burden to demonstrate that the coverage dispute can be timely adjudicated in the state court in California.  The request for abstention is denied.

## V. CONCLUSION

For the foregoing reasons, the Court finds that there is no basis to dismiss the Amended Complaint and there is no basis to abstain under either mandatory or permissive abstention. Therefore, First American's Motion will be denied.  An appropriate Order follows.

**BY THE COURT**:

Dated: September 11, 2014
Wilmington, Delaware

Brendan Linehan Shannon
Chief United States Bankruptcy Judge